On March 21st, 1939, an order was made by this court in a cause wherein G. Loewus Co., Inc., was complainant, and Distillery Workers' Union, Local 20244, and certain of its officers and members were defendants, enjoining the defendants and all persons acting in concert or in combination with them, from picketing the complainant's premises on Frelinghuysen avenue, Newark. The following day pickets, not defendants to the bill or members of the Distillery Workers' Local or employed by it, but employed by Salesmen's Union, *Page 540 
Local 20378, began picketing the Loewus premises. Although served with a copy of the injunctive order, they continued their picketing. Whereupon the complainant filed its petition, alleging that the Salesmen's Union and its pickets were acting in concert and in combination with defendants, and prayed that they be adjudged guilty of contempt.
The proofs taken at the trial disclose that the petitioner is a liquor rectifier. Its employes, engaged in its rectifying plant, are, or were until recently, members of the Distillery Workers' Union; its salesmen were members of the Salesmen's Union prior to November 15th, 1938, when a contract with that union expired. Negotiations for a renewal continued through December without success. The executive secretary of the Salesmen's Union spoke to the officer of complainant who had these matters in charge in January and again in February, 1939, urging a resumption of negotiations. On the last occasion, the union agent was told definitely that the company would not re-enter relations with the union and thereupon he warned the company to beware of trouble which the union would cause it. He learned with satisfaction of the dispute between the petitioner and the Distillery Workers' and also with the Truckmen's Union and when he read in the newspaper that picketing by the Distillery Workers' had been enjoined, he decided that the time was ripe for his union to act, and so he ordered the picketing. He and his union acted independently of the Distillery Workers' Union and without consulting them.
In contempt cases, a distinction is sometimes made between disobedience to an injunction and flouting of the injunction. In the first case, there is a breach of the injunction — a phrase which has a technical meaning — and that is an offense that can be committed only by those to whom the injunction is directed. In the second case, there is an obstructing of the course of justice, an offense of which either a party or a stranger may be guilty. In re Staire, 111 N.J. Eq. 285. The injunction which was the basis of that proceeding was addressed to the defendants and "all persons associated with or acting in combination with them." Vice-Chancellor Backes found that the accused were not within the class to *Page 541 
whom the injunction was directed, although they were aiders and abettors, and so he acquitted them of the only charge preferred against them, namely, disobeying the injunction.
"As it is neither charged nor proven that the plaintiff in error was one of the parties enjoined, he is not chargeable for breach or violation of the injunction, in the well recognized sense of those terms applicable to parties. He was bound, alike with other members of the public, to observe its restrictions when known, to the extent that he must not aid or abet its violation by others, nor set the known command of the court at defiance, by interference with or obstruction of the administration of justice; and the power of the court to proceed against one so offending and punish for the contemptuous conduct is inherent and indisputable. Seaward v. Paterson, 1 L.R. Ch.Div. (1897) 545, 554; 76 Law Times (N.S.) 215; In reReese, 107 Fed. Rep. 942; 47 C.C.A. 87, 90." Garrigan v. UnitedStates, 89 C.C.A. 494; 163 Fed. Rep. 16.
The distinction is of consequence principally on a charge of civil contempt, for an act willfully committed by a party in violation of an injunction and conduct by a stranger in defiance of the injunction, are equally criminal contempt. Yet, as the case first cited proves, the distinction as a matter of pleading may be important in criminal contempts. The safe course for the draftsman of the petition is to charge the facts on which he relies and conclude with a prayer that the accused be adjudged guilty of contempt in the premises and punished accordingly — not confine the charge to a violation of the injunction.
When the acts charged amount to obstruction of justice, it is immaterial whether or not the injunction expressly includes the defendants' agents and servants, aiders and abettors, counsellors and confederates, and the like. Whoever, with knowledge of the injunction, counsels or aids the persons restrained to violate the injunction, or who, at their request or in concert with them, does the act forbidden, is guilty of contempt. Taliaferro v.United States, 290 Fed. Rep. 906: McCourtney v. United States,291 Fed. Rep. 497; Minerich v. United States, 29 Fed. Rep.
2d 565; Fanstiel Met. *Page 542 Corp. v. Lodge 66, 14 N.E. Rep. 2d 991. This principle was recognized In re Cooley, 95 N.J. Eq. 485; 103 N.J. Eq. 377,
growing out of a decree for specific performance.
Conversely, one who is not included in the mandate of the court, and who acts independently, and not as an aider or abettor or confederate of those enjoined, is not guilty of contempt even though he do an act of the same character as that which the defendants are forbidden to commit. Berger v. Superior Court
(Cal.), 167 Pac. Rep. 143; 15 A.L.R. 373; Rigas v.Livingston (N.Y.), 70 N.E. Rep. 107.
Tested by these rules, the accused are not guilty as charged. They picketed petitioner's place of business for their own ends and not in aid of, or in collaboration with, the parties who had been enjoined. But as their picketing, which was the occasion for this proceeding, was tortious, no costs will be allowed them.